******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESPINOSA, J., with whom ROBINSON, J., joins, dissenting. I respectfully disagree with the decision of the majority to affirm the judgment of the Appellate Court, which reversed the judgment of conviction of the defendant, Dustin Ruocco, on the ground that the trial court committed plain error by failing to instruct the jury, as mandated by General Statutes § 54-84 (b),[1] that it may draw no unfavorable inferences from the defendant's failure to testify at his trial on charges of burglary in the third degree and larceny in the third degree. *State* v. *Ruocco*, 151 Conn. App. 732, 738–39, 95 A.3d 573 (2014). Specifically, I would overrule the Appellate Court's decision in *State* v. *Suplicki*, 33 Conn. App. 126, 130–31, 634 A.2d 1179 (1993), cert. denied, 229 Conn. 920, 642 A.2d 1216 (1994), which held that the complete failure to provide the instruction required by § 54-84 (b) is per se plain error that requires reversal. I further conclude that the trial court's failure to instruct under § 54-84 (b) was harmless error, meaning that the record fails to reveal the manifest injustice necessary for plain error reversal. Because I would reverse the judgment of the Appellate Court, I respectfully dissent.

I

I begin with the state's claim, not reached by the majority, that the Appellate Court improperly concluded that a new trial is required when there is a complete failure by the trial court to provide the instruction mandated by § 54-84 (b).[2] The state argues that the Appellate Court's decision in *State* v. *Suplicki*, supra, 33 Conn. App. 130–31, which was controlling on this point,[3] is wrongly decided because it improperly equated "plain error" with "structural error" in determining that the constitutional nature of the right protected by § 54-84 (b) requires a new trial in all cases. The state contends that requiring reversal without considering whether the failure to instruct was harmful is inconsistent with both: (1) the two-pronged test governing the plain error doctrine, which requires an assessment of whether the record demonstrates the presence of "manifest injustice"; and (2) the prevailing body of case law holding that trial courts' failures to provide "no adverse inference" instructions under *Carter* v. *Kentucky*, 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981), are amenable to harmless error review. In response, the defendant contends that the "stringent instructional language" of § 54-84 (b) represents a legislative judgment that "the mandated instruction is an unquantifiable impropriety that casts doubt on the fairness of the entire trial," and that the manifest injustice prong of the plain error test "is simply met per se under the statute whenever omission is total as opposed to partial." Relying on *State* v. *Burke*, 182 Conn. 330, 438

A.2d 93 (1980), and dicta from this court's decision in *State* v. *Sinclair*, 197 Conn. 574, 586, 500 A.2d 539 (1985), the defendant contends that *Suplicki* remains good law. I agree, however, with the state, and conclude that failure to provide the no adverse inference instruction mandated by § 54-84 (b) does not require reversal in the absence of manifest injustice in the form of constitutional harm resulting from the infringement of the defendant's fifth amendment privilege against self-incrimination.

Determination of a remedy for a statutory violation presents a question of statutory interpretation over which our review is plenary. See *Ulbrich* v. *Groth*, 310 Conn. 375, 448, 78 A.3d 76 (2013); cf. *State* v. *Heredia*, 310 Conn. 742, 754–57, 81 A.3d 1163 (2013) (deciding as question of statutory interpretation whether Practice Book § 37-12 [a] requires release of defendant when probable cause determination not made within forty-eight hours of arrest). It is well settled that we interpret statutes in accordance with the plain meaning rule set forth in General Statutes § 1-2z. See, e.g., *State* v. *Heredia*, supra, 756–57.

The statutory language at issue in this appeal provides in relevant part: "Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. . . ." General Statutes § 54-84 (b). The statute, however, does not set forth a specific appellate remedy for a trial court's complete failure to give the mandatory "no adverse inference" instruction, and, in particular, whether a trial court's failure to administer the prescribed instruction requires reversal in all cases. In "interpreting [statutory] language . . . we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014). Thus, I turn first to prior judicial interpretations of § 54-84 (b), in particular, the Appellate Court's controlling decision on this point in *State* v. *Suplicki*, supra, 33 Conn. App. 126. See footnote 3 of this dissenting opinion.

Observing that this court had left the question open in *State* v. *Sinclair*, supra, 197 Conn. 585–86, the Appellate Court held in *Suplicki* "that the total omission of the 'no adverse inference' instruction is plain error that is not subject to a harmless error analysis. The unconditional language of the statute is a legislative mandate and the failure to use that language is a pivotal aspect of the defendant's privilege against self-incrimination. The statutory language is based on a constitutional right, and its omission can never be harmless."[4] *State* v. *Suplicki*, supra, 33 Conn. App. 130. In so concluding, the Appellate Court did not cite the language or legislative history of § 54-84 (b), but, rather, relied on a string

citation to four federal and state cases. See id., 130–31. A brief review of those cases demonstrates, however, that they do not support the proposition for which the Appellate Court cited them, most notably the two United States Supreme Court decisions, both of which embrace harmless error review for significant constitutional errors. See *Arizona* v. *Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (admission of involuntary confession subject to harmless error review); *Rose* v. *Clark*, 478 U.S. 570, 579–80, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986) (instruction improperly shifting burden of proof on malice subject to harmless error review). The Appellate Court's reliance in *Suplicki* on its decisions in *State* v. *Hamilton*, 30 Conn. App. 68, 76–78, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994), and *State* v. *Payne*, 12 Conn. App. 408, 413–15, 530 A.2d 1110 (1987), which held that the trial court's complete failure to instruct on an essential element of the charged offense was not subject to harmless error review; *State* v. *Suplicki*, supra, 131; is now unpersuasive because that pair of cases is wholly inconsistent with the United States Supreme Court's subsequent decision in *Neder* v. *United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), which concluded that "the omission of an element is an error that is subject to harmless-error analysis . . . ."

The Appellate Court's error in *Suplicki*, however, is understandable when viewed in the context of this court's preceding decisions in *State* v. *Burke*, supra, 182 Conn. 330, and *State* v. *Sinclair*, supra, 197 Conn. 574. In *Burke*, this court held that it was plain error, requiring reversal, when the trial court completely failed to give the instruction mandated by § 54-84 (b); the court simply did not consider whether any kind of harmless error analysis was applicable in this context. *State* v. *Burke*, supra, 332–34; see also *State* v. *Carter*, 182 Conn. 580, 580–81, 438 A.2d 778 (1980) (per curiam) (companion case following *Burke*). Subsequently, in *Sinclair*, this court determined that the complete failure to instruct pursuant to § 54-84 (b) was harmful error, thus rendering it unnecessary to consider the state's claim that harmless error analysis is applicable in such cases.[5] *State* v. *Sinclair*, supra, 584–86. In dicta, however, the court cited *Burke* and *State* v. *Carter*, supra, 580, and observed that it had not previously "undertake[n] such an inquiry when we held that total noncompliance with § 54-84 (b) constituted plain error." *State* v. *Sinclair*, supra, 585. The court further observed in dictum that "[t]here is much to be said in favor of a rule that violation of the mandate of § 54-84 (b) automatically requires a new trial," stating that: "Indubitably, the legislature has the power to implement constitutional rights in a manner that is more stringent than the constitution itself provides. In enacting § 54-84 (b), the legislature has done so. While the constitutional right to a 'no adverse inference'

charge depends upon the defendant's request of such a charge, the statutory right is conferred upon the defendant unconditionally, in the absence of his request that the charge not be given. It would be entirely reasonable to conclude that the principle of harmless error may be inconsistent with the unconditional language of the statute that the legislature has enacted for the protection of the right not to testify."[6] (Footnote omitted.) Id.

In my view, this court should overrule the Appellate Court's decision in *Suplicki*, and our decisions in *Sinclair* and *Burke*, to the extent they stand for the proposition that a trial court's failure to give the no adverse inference instruction mandated by § 54-84 (b) is per se plain error requiring reversal. Holding the doctrine of harmless error inapplicable when a trial judge fails to comply with § 54-84 (b) is not mandated by the statute's purpose and, further, is absolutely incompatible with our entrenched plain error jurisprudence. Turning first to the purpose of § 54-84 (b),[7] I observe that it "statutorily established a new procedure concerning the rights of accused persons who choose to exercise their fifth amendment right not to testify." (Internal quotation marks omitted.) *State* v. *Tatem*, 194 Conn. 594, 597–98, 483 A.2d 1087 (1984). The legislature enacted § 54-84 (b) in 1977 to address confusion created by this court's decision in *State* v. *Branham*, 171 Conn. 12, 17–18, 368 A.2d 63 (1976), which had held, in contravention of the then prevailing federal case law, that a criminal defendant was not constitutionally entitled to a "no adverse inference" instruction, even upon request. See 20 S. Proc., Pt. 5, 1977 Sess., pp. 2068–69, remarks of Senator Salvatore C. DePiano (discussing reaction and confusion in state courts in wake of *Branham*); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1977 Sess., pp. 1251–52, remarks of Attorney Jerrold Barnett, Office of the Chief Public Defender (explaining that *Branham* was minority position among state courts and in conflict with federal decisions on point). Subsequent to the enactment of § 54-84 (b), the United States Supreme Court decided *Carter* v. *Kentucky*, supra, 450 U.S. 305, which followed its decision on prosecutorial comment in *Griffin* v. *California*, 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), and required judges to protect a defendant's assertion of the fifth amendment privilege from the "toll" of undue juror speculation by instructing juries, at the "proper request" of the defendant, that they may not draw adverse inferences from the defendant's election not to testify. See *State* v. *Tatem*, supra, 598–99.

I believe that we must view § 54-84 (b) through the lens of the constitutional right that it seeks to effectuate, namely, the right to a jury instruction embodied by *Carter* v. *Kentucky*, supra, 450 U.S. 305. See *State* v. *Tatem*, supra, 194 Conn. 599 (stating that "rationale [of *Carter* v. *Kentucky*, supra, 305] is fully appropriate to the application of the mandate of § 54-84 [b] to this

case"); see also *State* v. *Day*, 233 Conn. 813, 851 n.32, 661 A.2d 539 (1995) (describing "constitutional underpinnings of § 54-84"), overruled on other grounds by *State* v. *Connor*, 292 Conn. 483, 517–18, 973 A.2d 627 (2009). Put differently, although the legislature provided a greater protection for the right against self-incrimination than existed under this court's constitutional jurisprudence and, indeed, the United States Supreme Court's subsequent decision in *Carter* v. *Kentucky*, supra, 288, it only addressed the substantive right, rather than the appellate remedies available for the violation of that right. See 20 H.R. Proc., Pt. 11, 1977 Sess., p. 4544, remarks of Representative Robert G. Jaekle (discussing amendment to bill to make instruction automatic with opt-out, rather than dependent on defendant's request).

Thus, I find it instructive that all federal courts, and the vast majority of state courts, that have considered the issue hold that a trial court's failure to give a no adverse inference instruction when requested by a defendant as set forth in *Carter* v. *Kentucky*, supra, 450 U.S. 300, is not structural error, but rather, is amenable to harmless error review.[8] See, e.g., *United States* v. *Whitten*, 610 F.3d 168, 200–201 (2d Cir. 2010); id., 213–14 (Livingston, J., concurring in part and dissenting in part); *United States* v. *Soto*, 519 F.3d 927, 930–31 (9th Cir. 2008); *Lewis* v. *Pinchak*, 348 F.3d 355, 358–59 (3d Cir. 2003), cert. denied, 540 U.S. 1200, 124 S. Ct. 1461, 158 L. Ed. 2d 117 (2004); *Beathard* v. *Johnson*, 177 F.3d 340, 350 (5th Cir.), cert. denied, 528 U.S. 954, 120 S. Ct. 380, 145 L. Ed. 2d 296 (1999); *United States* v. *Burgess*, 175 F.3d 1261, 1266–67 (11th Cir. 1999); *United States* v. *Brand*, 80 F.3d 560, 568 (1st Cir. 1996), cert. denied sub nom. *Aponte-Velazquez* v. *United States*, 519 U.S. 1077, 117 S. Ct. 737, 136 L. Ed. 2d 676 (1997); *Hunter* v. *Clark*, 934 F.2d 856, 859–60 (7th Cir.) (en banc), cert. denied, 502 U.S. 945, 112 S. Ct. 388, 116 L. Ed. 2d 338 (1991); *Finney* v. *Rothgerber*, 751 F.2d 858, 864 (6th Cir.), cert. denied, 471 U.S. 1020, 105 S. Ct. 2048, 85 L. Ed. 2d 310 (1985); *Burns* v. *State*, 699 So. 2d 646, 651–52 (Fla. 1997), cert. denied, 522 U.S. 1121, 118 S. Ct. 1063, 140 L. Ed. 2d 123 (1998); *Parker* v. *State*, 425 N.E.2d 628, 630 (Ind. 1981); *State* v. *Griffin*, 576 N.W.2d 594, 597 (Iowa 1998); *James* v. *Commonwealth*, 679 S.W.2d 238, 239 (Ky. 1984), cert. denied, 470 U.S. 1086, 105 S. Ct. 1849, 85 L. Ed. 2d 147 (1985); *Richardson* v. *State*, 402 So. 2d 848, 852 (Miss. 1981); *State* v. *Storey*, 986 S.W.2d 462, 464 (Mo.), cert. denied, 528 U.S. 895, 120 S. Ct. 226, 145 L. Ed. 2d 189 (1999); *Franklin* v. *State*, 98 Nev. 266, 270, 646 P.2d 543 (1982); *State* v. *Camacho*, 218 N.J. 533, 551–52, 95 A.3d 635 (2014); *White* v. *State*, 779 S.W.2d 809, 828 (Tex. Crim. App. 1989), cert. denied, 495 U.S. 962, 110 S. Ct. 2575, 109 L. Ed. 2d 757 (1990).

The authorities that I have found holding to the contrary, from Alabama, Pennsylvania, and New York, lack persuasive value because they are either conclusory or

predated and, therefore, do not consider the development of harmless error jurisprudence under *Carter* v. *Kentucky*, supra, 450 U.S. 288. See *Perry* v. *State*, 368 So. 2d 310, 312 (Ala. 1979) (holding that under Ala. Code § 12-21-220 [1975], "[s]ubjective analysis on a case-by-case basis, to determine whether such error has affected the substantial rights of the accused, has no field of operation where, as here, the denial of the requested instruction is tantamount to the denial of the fundamental right of the accused, as constitutionally and statutorily mandated, to elect not to testify"); *Turner* v. *State*, 924 So. 2d 737, 774 (Ala. Crim. App. 2002) (urging Alabama Supreme Court to reconsider *Perry* v. *State*, supra, 310, as outdated in "light of the abundant [case law] in other jurisdictions"), cert. denied, 547 U.S. 1056, 126 S. Ct. 1653, 164 L. Ed. 2d 399 (2006); *Commonwealth* v. *Lewis*, 528 Pa. 440, 453, 598 A.2d 975 (1991) (holding that failure to give no adverse inference instruction is per se reversible under state constitution, but failing to explain why violation of *Carter* v. *Kentucky*, supra, 288, is structural in nature); *People* v. *Britt*, 43 N.Y.2d 111, 113–15, 371 N.E.2d 504, 400 N.Y.S.2d 785 (1977) (holding that failure to give no adverse inference instruction required by N.Y. Crim. Proc. Law § 300.10 [2] is reversible error per se because of "mandatory language of the statute, coupled with the fundamental importance of the right it protects," but relying on *Bruno* v. *United States*, 308 U.S. 287, 294, 60 S. Ct. 198, 84 L. Ed. 257 [1939], which predated modern harmless error jurisprudence).

In contrast to the unpersuasive decisions of those courts following the minority approach, those courts adopting the majority approach reason that a trial court's "failure to give a requested . . . instruction" pursuant to *Carter* v. *Kentucky*, supra, 450 U.S. 288, is not a structural error "for which an assessment of the evidence is unsuitable precisely because it concerns the evidentiary value the jury may give to a defendant's election not to testify on his own behalf."[9] *United States* v. *Brand*, supra, 80 F.3d 568. Thus, in the absence of any statutory language or legislative history suggesting that automatic reversal is the legislature's desired remedy for the court's failure to give the instruction mandated by § 54-84 (b), I would not impute to the legislature any desire to render such omissions structural error per se, because that extraordinary appellate remedy is reserved for a very limited class of constitutional claims in which the fairness in the proceedings is shaken given the unquantifiable nature of the error. See, e.g., *State* v. *Lopez*, 271 Conn. 724, 733–34, 859 A.2d 898 (2004); see also *United States* v. *Gonzalez-Lopez*, 548 U.S. 140, 149–50, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006) (structural errors include: [1] complete denial of counsel; [2] denial of right of self-representation; [3] denial of right to public trial; [4] denial of right to trial by jury by giving of defective reasonable doubt

instruction; and [5] denial of right to counsel of choice).

Moreover, the notion of per se reversibility for failure to instruct under § 54-84 (b) is wholly inconsistent with the plain error doctrine, which, "codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . .

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record.

"Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . In *State* v. *Fagan*, [280 Conn. 69, 87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007)], we described the two-pronged nature of the plain error doctrine: [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Sanchez*, 308 Conn. 64, 76–78, 60 A.3d 271 (2013). The second prong of the plain error test sets a "stringent standard" that "will be met only upon a showing that, as a result of the obvious impropriety, the defendant has suffered harm so griev-

ous that fundamental fairness requires a new trial." *State* v. *Jamison*, 320 Conn. 589, 599, 134 A.3d 560 (2016).

On this point, I find instructive this court's recent decisions in *State* v. *Sanchez*, supra, 308 Conn. 64, and *State* v. *Myers*, 290 Conn. 278, 963 A.2d 11 (2009). In *Sanchez*, this court held that reversal under the plain error doctrine was not warranted in the absence of a showing of harm when a trial court failed to give an instruction with respect to eyewitness identification pursuant to *State* v. *Ledbetter*, 275 Conn. 534, 575, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).[10] *State* v. *Sanchez*, supra, 80, 83–84. In *Myers*, this court held similarly with respect to a trial court's failure to obtain a plea or conduct a trial in accordance with Practice Book § 42-2, prior to sentencing a defendant as a repeat offender under General Statutes § 21a-277 (a). *State* v. *Myers*, supra, 290–91. The court in *Sanchez*, citing the holding in *State* v. *Myers*, supra, 290, that a " 'trial court's failure to comply with a rule of criminal procedure, without more, is insufficient to require reversal for plain error' "; [emphasis omitted] *State* v. *Sanchez*, supra, 81; further observed that, "[t]o find plain error without regard to the evidence in the case would be inconsistent with the requirement of showing manifest injustice. For example, if evidence unaffected by the omitted instruction included multiple reliable confessions by the defendant and DNA evidence conclusively linking the defendant to the crime, it would be exceedingly difficult to justify a conclusion that the patent error so affected the fairness and integrity of and public confidence in the judicial proceedings as to require reversal of the judgment. Indeed, in the absence of a circumstance like structural error, which defies harmless error analysis . . . we are unaware of a framework under which this court would reverse a criminal conviction without considering the harmfulness of the impropriety in light of the entire case."[11] (Citation omitted.) Id., 84; see also *State* v. *Jamison*, supra, 320 Conn. 600–601 (court, in determining whether failure to give accomplice credibility instruction was reversible under plain error doctrine, could not conclude that omission was so harmful as to result in manifest injustice). I view the supervisory rule and rule of practice at issue in *Sanchez* and *Myers* as indistinguishable in nature from § 54-84 (b), as all are prophylactic measures intended to protect independent constitutional rights.[12] See *State* v. *Sanchez*, supra, 80 (describing *Myers* as instructive because "plain error question was raised in the context of the trial court's failure to comply strictly with a rule of practice intended to protect a defendant's right to due process").

Accordingly, I conclude that a trial court's failure to give the instruction required by § 54-84 (b) is not some unique species of plain error requiring reversal without regard to the manifest injustice caused by the omission,

as embodied by the harmfulness of the error. This is particularly so given the statute's "constitutional underpinnings," which necessarily encompass an inquiry into whether the state has proven the error harmless beyond a reasonable doubt.[13] *State* v. *Day*, supra, 233 Conn. 851 n.32; see, e.g., *State* v. *Yurch*, 229 Conn. 516, 523, 641 A.2d 1387 ("when a statutory violation implicates the defendant's constitutional right against self-incrimination . . . it is the state's burden to prove harmlessness beyond a reasonable doubt" [citation omitted]), cert. denied, 513 U.S. 965, 115 S. Ct. 430, 130 L. Ed. 2d 343 (1994). Thus, I would not find reversible plain error arising from the failure to instruct in accordance with § 54-84 (b) without first conducting "an examination of the particular facts in the case to determine whether the consequence of the omission has resulted in manifest injustice to the defendant," which includes consideration of "whether the substantive concern underlying the instruction otherwise had been brought to the jury's attention" and "whether there is independent evidence of the defendant's guilt." *State* v. *Sanchez*, supra, 308 Conn. 82.

II

I now turn to whether the state proved beyond a reasonable doubt that the trial court's failure to instruct the jury in accordance with § 54-84 (b) was harmless error. Given the overwhelming evidence in this case, and with the inconsistencies cited by the majority being ultimately irrelevant to the central question before the jury, I conclude that the trial court's failure to provide a no adverse inference instruction pursuant to § 54-84 (b) was harmless error.

Although much of the evidence is circumstantial, it is as overwhelming as the apocryphal morning snow on the ground. See, e.g., *State* v. *Perkins*, 271 Conn. 218, 246, 856 A.2d 917 (2004) ("Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." [Internal quotation marks omitted.]). The present case involved a theft of power tools and wire from a shed in the backyard of Donald Gennette and Maria Gennette; the backyard of their property was an open space that abutted the property lines of their neighbors on either side, Thomas Blake and Ricardo Gallo. Specifically, multiple witnesses, including Gallo and Maria Gennette, were familiar with the defendant and his vehicle, a red Toyota Corolla, because he rented a basement apartment in Blake's home. Gallo and Maria Gennette testified that, on May 5, 2011, they saw the defendant's red Toyota Corolla parked immediately next to the property line between the Gennette and Blake properties. The vehicle had been backed in so

that it was facing the street, in close proximity to the shed on the Gennettes' property. Gallo saw the vehicle at approximately 2 p.m., and Maria Gennette saw it between 11:30 a.m. and 12 p.m., after she had returned home from work. Maria Gennette testified that she had never seen the defendant's vehicle parked in that particular spot before. Even more unusual, the defendant's girlfriend engaged Maria Gennette in a conversation when she passed by, which had never happened in the nine months that the defendant and his girlfriend lived next door. Later that afternoon, around 2 p.m., Gallo saw the defendant enter the Gennettes' unlocked shed, remove items including a circular saw, a yellow chop saw, and a large portion of wire, and place them into the trunk of the Corolla. The very next day, the defendant went to a scrap yard in New Haven, where he provided photographic identification in order to sell a quantity of wire, for which he received $65. The wire that the defendant sold was consistent with the wire that had been reported stolen.[14]

I conclude that the cumulative strength of the evidence in this case renders it distinguishable from *State v. Dudla*, 190 Conn. 1, 458 A.2d 682 (1983), on which the majority relies heavily for the proposition that the failure to give a no adverse inference charge was harmful because the jury might have considered the defendant's failure to testify in deciding to credit the testimony at trial.[15] *Dudla* is inapposite because it depended on the uncorroborated testimony of *one* witness, albeit a police officer, who testified that the defendant had thrown a gun on the grass during a routine traffic stop; that was the "*only* evidence offered to link the defendant to the weapon, the possession of which is the basis of his conviction." (Emphasis added.) Id., 7. In contrast, in the present case, Gallo's eyewitness testimony about the theft itself was bolstered by the other circumstantial evidence, including Maria Gennette's testimony about the unusual location of the defendant's vehicle near their shed, the unusual friendliness of the defendant's girlfriend toward Maria Gennette when she approached the defendant's vehicle, and the defendant's sale of a large quantity of wire on the very next day.

Finally, I note that the state's closing arguments treaded nowhere near mentioning the defendant's failure to testify; see, e.g., *Griffin* v. *California*, supra, 380 U.S. 615; and the trial court's instructions emphasized the presumption of innocence and the burden of proof, in particular emphasizing, with respect to the alibi defense, the state's responsibility to prove that the defendant was at the scene, that the "defendant does not have to prove his claim that he was elsewhere," and that it is "sufficient if, on considering all the evidence there arises in your mind a reasonable doubt as to the defendant's presence at the scene of the crime when it was committed." The protective effect of these

general instructions,[16] combined with the overwhelming evidence against the defendant, leaves me convinced beyond a reasonable doubt that the trial court's failure to instruct the jury in accordance with § 54-84 (b) did not affect the verdict in this case. See *Hunter* v. *Clark*, supra, 934 F.2d 860–61 (failure to give no adverse inference instruction did not affect verdict in bank robbery trial given positive eyewitness identification of defendant, testimony of witnesses placing defendant with other robbers shortly before and after crime, and testimony that defendant took lead role in dividing proceeds after robbery); *State* v. *Griffin*, supra, 576 N.W.2d 597–98 (failure to give no adverse inference instruction was harmless error in gang sexual assault case when victim's identification of defendant was consistent and "unequivocal" because she was very familiar with him, another perpetrator identified defendant, and DNA evidence did not exclude him); *Richardson* v. *State*, supra, 402 So. 2d 852 (failure to give no adverse inference instruction considered harmless because "identification of appellant as the burglar and his guilt of the crime were proved beyond reasonable doubt by overwhelming evidence"); *State* v. *Camacho*, supra, 218 N.J. 554–55 (failure to give no adverse inference instruction harmless error in car theft case given instructions on burden of proof and "overwhelming evidence that [the] defendant was the driver of the blue Audi when it eluded police," including identifications by multiple police officers, one of which took place when officer arrested defendant upon exiting stolen car). Accordingly, I conclude that the manifest injustice necessary to trigger reversal under the plain error doctrine simply is absent in this case.

Because I would reverse the judgment of the Appellate Court and reinstate the judgment of conviction, I respectfully dissent.

[1] General Statutes § 54-84 provides: "(a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

[2] I agree with the statement of the background facts and procedural history set forth in the majority's opinion.

[3] See, e.g., *State* v. *Ruocco*, supra, 151 Conn. App. 744; *State* v. *Stewart*, 60 Conn. App. 301, 310, 759 A.2d 142, cert. granted and remanded for reconsideration, 255 Conn. 913, 763 A.2d 1039 (2000) (appeal withdrawn October 1, 2001); *State* v. *Cruz*, 59 Conn. App. 426, 430, 757 A.2d 74, cert. denied, 254 Conn. 947, 762 A.2d 904 (2000).

[4] Claims that a trial court's instructions, as given, did not satisfy § 54-84 (b) have been reviewed, however, for harmless error, to determine whether it was reasonably possible that the noncompliant charge misled the jury. See, e.g., *State* v. *Townsend*, 206 Conn. 621, 624–26, 539 A.2d 114 (1988); *State* v. *Miller*, 34 Conn. App. 250, 258–61, 641 A.2d 400, cert. denied, 230 Conn. 902, 644 A.2d 916 (1994).

[5] Citing *Carter* v. *Kentucky*, supra, 450 U.S. 304, and *State* v. *Cohane*, 193 Conn. 474, 484, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984), the court also noted that, in the purely constitutional

context "arising out of failure to give a 'no adverse inference' instruction, we expressly reserved the question whether noncompliance with so central an aspect of the privilege against self-incrimination could ever be considered harmless error." *State* v. *Sinclair*, supra, 197 Conn. 585.

[6] Concurring separately, Justice Shea characterized the majority's dictum eschewing harmless error review in cases of complete omissions of " 'no adverse inference' " instructions as "wholly superfluous." *State* v. *Sinclair*, supra, 197 Conn. 587. Justice Shea observed that the "sentence, though equivocal, is likely to be construed as an intimation that this court will not apply the harmless error principle to an inadvertent failure of the trial court, inculpating also counsel for the state and for the defendant who neglect to call attention to the matter, to give the 'no adverse inference' instruction mandated by . . . § 54-84 (b)." Id. Emphasizing that the record rendered it unnecessary to decide the issue, Justice Shea responded to the majority's dictum by "express[ing his] great reluctance to fashion another automatic reversal rule that would impose on the judicial system of this state the burden of a new trial no matter how overwhelming the evidence of guilt may be." Id.

[7] That there has been some division among our state's appellate judges about whether a complete omission is per se plain error requiring reversal suggests to me that there is more than one reasonable way to read the statute, thus rendering resort to extratextual sources appropriate under § 1-2z. Compare *State* v. *Sinclair*, supra, 197 Conn. 587 (*Shea, J.*, concurring), with id., 585, and *State* v. *Suplicki*, supra, 33 Conn. App. 130.

[8] The United States Supreme Court has expressly declined to decide this question. See *James* v. *Kentucky*, 466 U.S. 341, 351–52, 104 S. Ct. 1830, 80 L. Ed. 2d 346 (1984); *Carter* v. *Kentucky*, supra, 450 U.S. 304.

[9] In holding that a violation of *Carter* v. *Kentucky*, supra, 450 U.S. 288, which is passive in nature insofar as it concerns an omission, is amenable to harmless error analysis, the United States Court of Appeals for the Third Circuit observed in *Lewis* v. *Pinchak*, supra, 348 F.3d 358–59, that comments by a prosecutor affirmatively urging jurors to draw adverse inferences from failures to testify, or a jury instruction authorizing such inferences, in violation of *Griffin* v. *California*, supra, 380 U.S. 609, are subject to review for harmless error. See *Chapman* v. *California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); see also *United States* v. *Hasting*, 461 U.S. 499, 503, 510–11, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983) (state proved error, based on prosecutorial comments in violation of *Griffin* v. *California*, supra, 609, arising from defendants' failure to offer evidence, harmless beyond reasonable doubt). The Third Circuit "perceive[d] no material distinction between prosecutorial comment cases and failure to instruct cases in terms of their susceptibility to a quantitative assessment of trial evidence"; *Lewis* v. *Pinchak*, supra, 359; observing that "[t]he same constitutionally protected interest is at stake when there is a *Carter* [v. *Kentucky*, supra, 288] violation and, if anything, the jeopardy to that interest is *greater* when a prosecutor improperly comments on a defendant's failure to testify. A prosecutor's comment on a defendant's decision not to testify affirmatively places the inference of guilt before the jury, while the failure to instruct the jury only creates the possibility that the jury will, on its own, draw an inference of guilt." (Emphasis added.) Id., 358.

[10] "In *State* v. *Ledbetter*, [supra, 275 Conn. 575], this court determined that, because of an increased risk of misidentification when an eyewitness is not advised that the perpetrator of a crime may or may not be present in the identification procedure, we would exercise our supervisory authority to require trial courts to provide an instruction to the jury regarding this risk in cases in which the identification procedure administrator had failed to provide such a warning, unless no significant risk of misidentification existed . . . ." *State* v. *Sanchez*, supra, 308 Conn. 66–67.

[11] I note that the United States Court of Appeals for the First Circuit has held similarly with respect to whether a trial court's failure to comply with *Carter* v. *Kentucky*, supra, 450 U.S. 288, is "plain" error and "affect[ed] substantial rights"; *United States* v. *Olano*, 507 U.S. 725, 736–37, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); and has engaged in a harmlessness analysis with respect to whether an unpreserved error of a violation of *Carter* v. *Kentucky*, supra, 288, warranted reversal under the federal plain error rule, rule 52 (b) of the Federal Rules of Criminal Procedure. See *United States* v. *Brand*, supra, 80 F.3d 567–68; see also *United States* v. *Medina-Martinez*, 396 F.3d 1, 9–10 (1st Cir.) (failure to give instruction pursuant to *Carter* v. *Kentucky*, supra, 288, not plain error because jury instructions covered presumption of innocence and burden of proof and court was "confident

that the evidence . . . would have resulted in a guilty verdict irrespective of the instructional error"), cert. denied, 544 U.S. 1007, 125 S. Ct. 1955, 161 L. Ed. 2d 786 (2005).

[12] I recognize that in *Sanchez* this court rejected the defendant's reliance on *State* v. *Burke*, supra, 182 Conn. 331–32, for the proposition that a showing of harm is not required for plain error reversal given failure to comply with a criminal procedure rule. The court described *Burke* as limited to "a statute enacted to overrule holdings by this court and to effectuate a fundamental right . . . ." *State* v. *Sanchez*, supra, 308 Conn. 81 n.7. I would not give this aspect of *Burke* even the limited credence that this court did in *Sanchez*, and I deem it not authoritative on this point because it does not appear that the harm question was even raised, let alone considered with respect to plain error reversal. I view the court's analysis in *Burke* as nothing more than an oversight insofar as it fails to accommodate for the contours of the plain error doctrine. See *State* v. *Myers*, supra, 290 Conn. 290 n.10 (criticizing *Jacqueline Properties*, *LLC* v. *Gartrell*, 101 Conn. App. 6, 919 A.2d 1059, cert. denied, 283 Conn. 907, 927 A.2d 918 [2007], as suggesting that violation of trial procedure statute is subject to per se reversal under plain error doctrine).

[13] It bears emphasis that "application of a harmless error analysis is consistent with the basic tenets and goals of our adversarial system of criminal justice. Indeed, the appellate harmless error doctrine is rooted in [a] fundamental purpose of our criminal justice system—to convict the guilty and acquit the innocent. The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence . . . and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." (Citation omitted; internal quotation marks omitted.) *State* v. *Yurch*, 229 Conn. 516, 523 n.6, 641 A.2d 1387, cert. denied, 513 U.S. 965, 115 S. Ct. 430, 130 L. Ed. 2d 343 (1994).

[14] After the defendant learned from Blake that Donald Gennette suspected him in the theft, the defendant denied involvement in the theft, but abandoned his apartment and possessions in Blake's house. The defendant asked Blake to meet him that evening at a nearby Burger King restaurant to bring him some medications from the apartment.

[15] The majority also cites inconsistencies in Donald Gennette's testimony about the amount of wire that was taken, which the defendant used to support his argument at trial that there was reasonable doubt about whether he was at the scene and as to what, if anything, was taken. This is consistent with the defendant's theory of the case, which was that Donald Gennette and Gallo lied to the police about the burglary in order to defraud the Gennettes' homeowners insurance company, and that if there was in fact a theft, Gallo—who was unemployed, home during the day, and knew the contents of the Gennettes' shed—had the motive and the opportunity to be the thief. None of these inconsistencies cast doubt, however, on the identification of the defendant as the person who had parked his vehicle in an unusual location near the shed, took items from the shed, and then sold wire consistent with that taken from the shed on the day after the burglary.

Further, the majority relies more on the defendant's alibi witness than the defendant himself did, as the defendant spent virtually all of his closing argument at trial attempting to discredit the testimony of the state's witnesses, and made only one isolated reference to the alibi witness, thus suggesting that alibi was not a major strategic focus for the defense. This was for good reason. As the prosecutor emphasized during rebuttal argument, the testimony of the alibi witness was shaky at best, insofar as he testified that the defendant was with him at his auto body repair shop the entire time during the day of the burglary, but he could not remember whether the defendant's girlfriend was present the entire time, what she did while she was at the body shop, and when she had left.

[16] During voir dire, the trial court instructed the venirepersons that the "defendant has no obligation to put on any evidence at all. He doesn't have to put on any evidence and he doesn't have to take the stand. And if he chooses not to take the stand or not to put on any evidence, you as a juror are not to hold that against him because those are his rights." Although the trial court's subsequent preliminary instructions prior to the start of evidence included a discussion of the burden of proof and the fact that the defendant may present evidence, but is not obligated to, they did not provide a specific "no adverse inference" admonition. I do not consider the voir dire instructions in my analysis because I recognize that preliminary instructions, includ-

ing those during jury selection prior to the actual commencement of the trial, have been held insufficient to satisfy the court's obligations under § 54-84 (b). See *State* v. *Hicks*, 97 Conn. App. 266, 276–77, 903 A.2d 685, cert. denied, 280 Conn. 930, 909 A.2d 958 (2006).

———————————————————