******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JUAN V.*
(AC 40889)

Prescott, Bright and Cobb, Js.

*Syllabus*

Convicted of four counts of the crime of risk of injury to a child in connection with his alleged sexual abuse of the minor victim, the defendant appealed to this court. *Held*:

1. The defendant could not prevail on his claim that the trial court committed plain error by permitting the jury, during its deliberations and in the jury room, to view, without limitation, a video recording of a forensic interview of the victim, which had been admitted into evidence as a full exhibit: because the video recording had been admitted into evidence for substantive purposes as a full exhibit with the agreement of defense counsel, the trial court correctly submitted the exhibit to the jury for its consideration as required by the applicable rule of practice (§ 42-23), which requires that all exhibits received into evidence be submitted to the jury, and in a manner consistent with our Supreme Court's stated preference for juries to receive all exhibits, when feasible, in the jury room; moreover, because the forensic interview was an exhibit and not the functional equivalent of in-court testimony, such as a deposition, the rule of practice (§ 42-26) requiring that the play back of trial testimony at the request of the jury be conducted in the courtroom did not apply to the jury's viewing of the video exhibit of the forensic interview; accordingly, because the defendant failed to demonstrate any error on part of the trial court, his claim of plain error failed.

2. The defendant could not prevail on his unpreserved claim that the trial court improperly instructed the jury on inferences, which was based on his assertion that the inferences instruction was an impermissible two-inference instruction that improperly diluted the state's burden of proof:

a. The defendant waived his right to challenge the inferences instruction on appeal, as he had a meaningful opportunity at trial to review it and expressed no concerns regarding the charge as given to the jury; the court provided defense counsel with a copy of the proposed instructions prior to the charging conference and held in-chambers conferences regarding the instructions, and defense counsel declined to object or take exception with the inferences instruction when the court read the final instructions to the parties at the charging conference.

b. The defendant did not demonstrate that the inferences instruction constituted an error that was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal under the plain error doctrine: the instruction given by the court was a correct statement of law and did not constitute an impermissible two-inference instruction, as it did not instruct the jury to draw a conclusion of guilt or innocence, but to draw a conclusion that seemed reasonable and logical, it related only to conclusions regarding individual pieces of evidence rather than the evidence as a whole, and the instructions, taken as a whole, did not mislead the jury as to the state's burden to prove every element of the charged offense beyond a reasonable doubt, and, therefore, the defendant's claim did not involve an error so obvious that it affected the fairness of or public confidence in the judicial proceeding; moreover, even if such error existed, the inferences instruction did not constitute manifest injustice, as the defendant failed to demonstrate that the challenged instruction was of such monumental proportion that it threatened to erode our system of justice or resulted in harm so grievous that fundamental fairness required a new trial.

3. The trial court did not abuse its discretion by denying the defendant's motion for a disclosure to the defense of the victim's school records following an in camera review of such records; this court's independent review of the undisclosed records confirmed the trial court's conclusion that the material did not contain information that was probative of the victim's credibility or otherwise exculpatory.

Argued March 7—officially released July 30, 2019

Substitute information charging the defendant with four counts of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of Danbury and tried to the jury before *Russo, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Pamela S. Nagy*, assistant public defender, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, was *Stephen J. Sedensky*, state's attorney, for the appellee (state).

*Opinion*

COBB, J. The defendant, Juan V., appeals from the judgment of conviction, rendered after a jury trial, of two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1)[1] and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] On appeal, the defendant claims that the court improperly (1) permitted the jury to have with it during its deliberations a video recording of a forensic interview between the victim and a forensic interviewer, which was admitted as a full exhibit, (2) instructed the jury on inferences in a manner that diluted the state's burden of proof, and (3) denied his motion for a disclosure of the victim's school records. The defendant's first two claims concededly are unpreserved and we conclude that the defendant has failed to demonstrate that this court should review them or that he should prevail pursuant to the doctrines on which he relies. As to the defendant's third claim of error, we have reviewed the victim's school records and conclude that they do not contain any information that is exculpatory or otherwise bears on the victim's credibility. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 2006, the defendant began dating the victim's mother, E, and after about six months, the defendant moved in with E and the victim. At that time, the victim was approximately four years of age. In 2008, the defendant and E married, and the defendant adopted the victim in 2009.[3]

When the victim was approximately ten years old, the defendant began touching her inappropriately when E was not home. Specifically, the defendant "touched [the victim] on [her] breasts and vagina with . . . [h]is mouth, his hands and his penis." On one occasion, the defendant attempted to put his penis inside of the victim's vagina. At another point, the defendant masturbated in front of the victim and ejaculated onto her leg.

On April 2, 2014, after watching a video in health class about sexually transmitted diseases, the victim, who was twelve years old, told two friends, J and S, that the defendant had touched her inappropriately. J and S encouraged the victim to tell her mother or another adult about the defendant's conduct, but the victim said that she was too afraid to do so. Later that day, at an after school program that the victim, J, and S attended, a program counselor overheard J and S discussing what the victim had told them about the defendant and reported what she had heard to her supervisor, who, in turn, contacted the Department of Children and Families (department).

The next day, the department contacted E. That same day, E met with Terry Harper, a department social

worker, and Harper informed E about the victim's allegations. That evening, E and the victim met with Donna Meyer, a forensic interviewer and consultant for the department's multidisciplinary investigative team. Meyer conducted a videotaped interview of the victim, during which the victim stated that the defendant began touching her inappropriately when she was ten years old and that his inappropriate conduct continued until approximately three weeks before her twelfth birthday. Specifically, the victim stated that the defendant touched her breasts and vagina multiple times and tried to kiss her on the mouth once or twice. The victim also stated that the defendant once came into the bathroom while she was showering. The victim described another occasion when the defendant showed her a pornographic video on his tablet computer and touched her breast. The victim stated that she was worried about contracting HIV because the defendant once licked his hand before touching her vagina.

After the forensic interview, Veronica Ron-Priola, a board certified pediatrician and a medical consultant for the department's multidisciplinary investigative team, performed a medical examination of the victim. The victim informed Ron-Priola that the defendant "touched her breast and her private parts, under her clothes." The victim also stated that the defendant "tried to put his thing in [her] private parts." Ron-Priola asked the victim whether, by "thing," she meant the defendant's penis, and the victim responded "yes." The victim also told Ron-Priola that it "hurt" when the defendant put his finger inside of her "privates" and that "a couple of times it hurt to go pee-pee" after the defendant touched her. Ron-Priola reported that the results of the victim's medical examination were normal.

The defendant subsequently was arrested and charged with two counts of risk of injury to a child in violation of § 53-21 (a) (1) and two counts of risk of injury to a child in violation of § 53-21 (a) (2). On September 29, 2016, following a jury trial, the defendant was convicted of all charges. On June 28, 2017, the defendant was sentenced to a total effective sentence of thirty years of incarceration, execution suspended after twelve years, and twenty years of probation. The defendant then filed the present appeal. Additional facts and procedural history will be set forth as necessary.

I

The defendant's first claim on appeal is that the court improperly permitted the jury to have with it during its deliberations the videotaped recording of the victim's forensic interview, which had been received into evidence as a full exhibit. Specifically, the defendant claims that the court should not have allowed the exhibit to be viewed by the jury in the jury room, but should have required that the exhibit be maintained separately and viewed only in open court upon request

by the jury. The defendant argues that by allowing the jury "unfettered access" to the recording, the court permitted the jury to afford the victim's forensic interview more weight than the rest of the evidence or other exhibits. We disagree.

The following additional facts and procedural history are relevant to this claim. Prior to trial, the state filed a notice of its intent to offer into evidence the videotaped recording of the victim's April 3, 2014 forensic interview and a transcript of the interview. In response, the defendant filed a written objection. In the defendant's memorandum of law filed in support of the objection, he argued that if the victim testified at trial, "the video should only be admitted if anything in her testimony contradicts the statements made to the forensic interviewer."

On May 10, 2017, the victim testified at trial. During direct examination, the victim testified in detail regarding numerous instances of sexual assault by the defendant that she had described in the forensic interview. The victim also testified to additional incidents of sexual assault by the defendant that she had not described in the forensic interview. Additionally, during her trial testimony, the victim stated that she did not recall telling Meyer of one occasion of assault and that she had misstated the location of another one of the assaults she had described in the forensic interview.

Immediately following this testimony by the victim, the state offered the video recording and a transcript of the forensic interview for substantive purposes. The defendant agreed that the recording and transcript should be admitted as full exhibits, "given the nature of the testimony here today and what is contained on the . . . video . . . ." The video recording and the transcript were admitted into evidence as full exhibits. The state then played the entire videotaped forensic interview for the jury, and then finished its direct examination of the victim. During the defendant's cross-examination of the victim, the defendant referenced the forensic interview multiple times.

During closing argument, defense counsel pointed out discrepancies between the victim's forensic interview and her testimony at trial. Defense counsel expressly informed the jury that the recording and a transcript of the forensic interview were full exhibits in the case, that it would have them in the jury room during deliberations, and urged them to review the video recording in evaluating the victim's credibility.[4]

After the court charged the jury, it reviewed the exhibits with counsel prior to delivering them to the jury for deliberations. The courtroom clerk informed the parties that the video recording of the forensic interview was a full exhibit. The prosecutor then asked whether the necessary equipment would be provided

to the jury in the jury room so that it could view the exhibit. The clerk responded, "That's my understanding." Defense counsel raised no objection to the exhibit being submitted to the jury in the jury room for its deliberations in the same way as the other exhibits.

During deliberations, the court received a note from the jury asking to hear "[the victim's] full testimony . . . ." In response to this note, the court reminded the jury that the victim's testimony included the videotaped recording of her forensic interview.[5] The court then informed the jury that the recording was a full exhibit and that they could watch it "in the privacy of the jury room . . . ."[6] The court also informed the jury: "If you want to send an additional note, specifying further exactly what you'd like to hear, I'll dismiss you for a couple of seconds . . . ." The jury responded that it wanted to hear the victim's live testimony only and not the video recording of the forensic interview. The court then had the victim's in-court testimony played back for the jury.

Although the defendant agreed that the video recording of the forensic interview should be admitted as a full exhibit and encouraged the jury to view the recording in the jury room during the jury's deliberations, he now claims that it was error for the court to permit the jury to have unlimited access to the exhibit, and that the court should have withheld the exhibit from the jury and allowed it to watch the recording only in open court upon request by the jury.

The defendant concedes that this claim is unpreserved but argues that the judgment should be reversed under the plain error doctrine. "It is well established that the plain error doctrine . . . is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved . . . are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Ruocco*, 322 Conn. 796, 803, 144 A.3d 354 (2016).

"Our Supreme Court . . . clarified the two step framework under which we review claims of plain error. First, we must determine whether the trial court in fact committed an error and, if it did, whether that error

was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal. . . . [U]nder the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust. . . . Only if both prongs of the analysis are satisfied can the appealing party obtain relief." (Internal quotation marks omitted.) *State* v. *Ruocco*, 151 Conn. App. 732, 739–40, 95 A.3d 573 (2014), aff'd, 322 Conn. 796, 144 A.3d 354 (2016).

In the present case, the defendant argues that the trial court committed plain error because allowing the video recording of the victim's forensic interview to be viewed by the jury in the jury room without limitation is contrary to the Supreme Court's decision in *State* v. *Gould*, 241 Conn. 1, 9, 695 A.2d 1022 (1997). The state disagrees and argues that the trial court had discretion to determine how the jury viewed the exhibit under *State* v. *Jones*, 314 Conn. 410, 419–24, 102 A.3d 694 (2014). We agree with the state that the trial court did not commit an error that was so clear, obvious, and indisputable as to warrant the extraordinary remedy of reversal under the plain error doctrine.

The submission to the jury of the video recording was required by Practice Book § 42-23, which provides in relevant part: "(a) The judicial authority *shall submit* to the jury . . . (2) All exhibits received in evidence. . . ." (Emphasis added.) Pursuant to this clear rule, exhibits received in evidence during a trial should be submitted to the jury for its consideration. The rule requires "[a]ll" exhibits to be submitted to the jury and does not contain an exception for video recordings of forensic interviews or any other type of exhibit. The video recording of the victim's forensic interview was received into evidence as a full exhibit after the defendant agreed that it was admissible. The exhibit was played in full during the trial and both parties used the exhibit during the trial and closing arguments. Thus, the court correctly followed the rule of practice that expressly governs the submission of exhibits to the jury.

The court also correctly followed the most recent Supreme Court case to consider and interpret Practice Book § 42-23 (a), *State* v. *Jones*, 314 Conn. 410, 102 A.3d 694 (2014). In *Jones*, the defendant made the opposite argument to the one being asserted here. The defendant claimed that the trial court violated § 42-23 (a) by ruling that the jury could view, during deliberations, a video

exhibit of a police stop of the defendant's car in open court rather than the jury deliberation room. Id., 412–13. Our Supreme Court held that "although Practice Book § 42-23 (a) requires trial courts to submit exhibits to the jury, that section does not control the manner in which exhibits must be submitted, and that the trial court retains discretion to determine the manner in which the jury examines submitted exhibits." Id., 417. The court, however, expressed its preference for allowing jurors to review trial exhibits in the privacy of the jury room, stating: "In light of the long-standing practice of our courts to provide juries all exhibits for their review in the privacy of the jury room . . . the preferred option is for juries to receive all exhibits, when feasible, in the jury room." (Citation omitted; internal quotation marks omitted.) Id., 424.

The defendant's reliance on the earlier case of *State* v. *Gould*, supra, 241 Conn. 1, is misplaced because that case did not involve exhibits, but, rather, it involved videotaped deposition testimony, admitted with the court's permission pursuant to different provisions of our rules of practice. See Practice Book (1997) §§ 791 and 803 (now §§ 40-44 and 40-56).[7] In *Gould*, the trial court allowed the state to take a witness' deposition in lieu of in person trial testimony because the witness was physically ill and unavailable to be called as a witness at trial. Id., 10. The deposition was taken pursuant to Practice Book § 791 (1), now Practice Book § 40-44 (1), which provides that upon request of any party, the court "may issue a subpoena for the appearance of any person at a designated time and place to give his or her deposition if such person's testimony may be required at trial and it appears to the judicial authority that such person . . . [w]ill, because of physical or mental illness or infirmity, be unable to be present to testify at any trial or hearing . . . ." Such depositions are taken under oath by "any officer authorized to administer oaths." Practice Book § 40-47. "The scope and manner of examination and cross-examination [at the deposition] shall be the same as that allowed at trial." Practice Book § 40-50. "So far as otherwise admissible under the rules of evidence, a deposition may be used as evidence at the trial or at any hearing if the deponent is unavailable . . . ." Practice Book § 40-46. Thus, the videotaped deposition testimony in *Gould* was the functional equivalent of in-court testimony, and was intended to and did serve as the witness' trial testimony. In *Gould*, the witness' deposition was taken under oath and was subject to examination and cross-examination and then played for the jury at the trial in lieu of the witness' in person testimony. *State* v. *Gould*, supra, 10–11. When trial testimony is played back for the jury during deliberations, Practice Book § 42-26[8] requires that "the jury shall be conducted to the courtroom."

Although the play back of the testimony in *Gould*

should have been conducted in the courtroom, the Supreme Court concluded that "allowing the jury to view the testamentary videotape of [the state's main witness], as it requested, was a discretionary matter for the trial court, and [the trial] court did not abuse that discretion." *State* v. *Gould*, supra, 241 Conn. 13. The court, however, held, under its supervisory powers, "that in the future this state's trial courts should supervise the jury review of such videotaped deposition testimony." Id., 9. In support of this holding, the court stated: "There is value . . . in requiring trial courts to supervise a jury's review of videotaped deposition testimony. . . . Where a court decides, pursuant to that court's sound discretion that the jury should be permitted to replay videotaped deposition testimony, it must be done in open court under the supervision of the trial judge and in the presence of the parties and their counsel." Id., 15.

In the present case, the victim testified in person at the trial. Her forensic interview was not conducted pursuant to the rules of practice governing trial depositions. See Practice Book §§ 40-44 through 40-58. The interview was not authorized or required by any judicial authority, but was conducted at the behest of the department as part of its investigation. At the interview, the victim was not under oath or subject to cross-examination. The video recording of the interview was played for the jury during a break in the victim's direct examination during the trial and then admitted into evidence as a full exhibit. The trial court followed the applicable rules of practice in this case when, after receiving a request by the jury to hear the victim's testimony, it submitted the full exhibit of the video recording of the forensic interview to the jury for its deliberations pursuant to Practice Book § 42-23 (a), and played back the victim's trial testimony in the courtroom pursuant to Practice Book § 42-26.[9]

We conclude that submitting the exhibit of the recording of the forensic interview to the jury in the jury room was a correct application of Practice Book § 42-23 and our Supreme Court's preference, expressed in *Jones*, that the jury receive all exhibits, when feasible, in the jury room. See *State* v. *Jones*, supra, 314 Conn. 424. Because allowing the jury to view the interview recording in the jury room was not an error, let alone an obvious, patent, or nondebateable error, we need not delve further into plain error analysis. Accordingly, the defendant's claim fails.[10] See *State* v. *Jamison*, 320 Conn. 589, 597, 134 A.3d 560 (2016) ("[a]n appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is . . . obvious in the sense of not debatable" [internal quotation marks omitted]).

II

The defendant next claims that the trial court improp-

erly instructed the jury on inferences in a manner that diluted the state's burden of proof. Specifically, the defendant argues that the instruction was an incorrect statement of the law on permissible inferences and "violated the defendant's right not to be convicted unless the state proved all the elements of the crime beyond a reasonable doubt." We conclude that the defendant waived this claim of instructional error and that he cannot prevail pursuant to the plain error doctrine.

The following additional facts and procedural history are relevant to this claim. On May 15, 2017, the state filed its request to charge, which included the following instruction on inferences: "While you the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"With respect to individual pieces of evidence, when the evidence is subject to two possible interpretations, you are not required to accept the interpretation consistent with innocence. You are allowed to choose the interpretation that seems reasonable and logical." In support of its requested instruction on inferences, the state cited *State* v. *Stanley*, 223 Conn. 674, 678, 682 n.5, 613 A.2d 788 (1992).

The defendant did not file a request to charge. Later that day, the trial court informed the parties that it anticipated having a revised draft of the jury charge for counsel to review soon and that it would contact them when the charge was ready.

On the morning of May 16, 2017, the court held an on the record charging conference with counsel for both parties. At the outset of the conference, the court stated: "We have had some chambers conference[s] . . . in connection with the . . . drafting of the charge itself. But we have a final edition and I'll ask the parties to give me their attention as I go through each captioned subsection and ask them if they have any objections or comments to each one." During the conference, the court asked whether either counsel had any comments or objections as to the final version of the instruction on inferences, which was identical to the instruction proposed by the state, except that the court added the following penultimate sentence: "But you are also not required to accept the interpretation consistent with guilt." Both counsel stated "[n]o comment" in response to the court's inquiry. The instructions, thereafter, were

marked as an exhibit.

Later that day, the court charged the jury consistent with its final version of the instruction, which it had read to counsel at the charging conference and on which it received no comment from either party: "While you, the jury, must find every element proven beyond a reasonable doubt, in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"With respect to individual pieces of evidence, when the evidence is subject to two possible interpretations, you are not required to accept the interpretation consistent with innocence. But, you are also not required to accept the interpretation consistent with guilt. You are allowed to choose the interpretation that seems reasonable and logical."

The defendant admits that this claim was not raised before the trial court, but argues that it is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[11] The defendant argues that *Golding* review is warranted "because the record is adequate for review and it implicates the defendant's constitutional right not to be convicted unless the state has proven every element of the crimes beyond a reasonable doubt." The state argues that "[t]he defendant's claim fails under the second and third prongs of *Golding* because: (1) the claim is not of constitutional magnitude; (2) he expressly waived the claim below; and (3) the instruction was a correct statement of law that did not dilute the state's burden of proof or mislead the jury." Although we agree with the defendant that the record is adequate for review of this claim, we agree with the state that the defendant waived this claim pursuant to *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011).

"[A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 467; see also id., 482–83.

"[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful

opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." (Internal quotation marks omitted.) *State* v. *Bellamy*, 323 Conn. 400, 409, 147 A.3d 655 (2016).

In the present case, the defendant does not argue that he lacked a meaningful opportunity to review the proposed charge. Indeed, the court gave counsel a copy of the proposed jury instructions prior to the charging conference and held in-chambers conferences regarding the instructions. Additionally, the trial court went through each of the instructions, on the record, and specifically asked whether the parties had any objections. When the court asked the parties whether they had any objections to the instruction on inferences, defense counsel stated "[n]o comment." Thus, we conclude that the defendant waived this claim of instructional error.[12]

Alternatively, the defendant argues that he should prevail on this claim pursuant to the plain error doctrine. See *State* v. *McClain*, 324 Conn. 802, 815, 155 A.3d 209 (2017) (holding *Kitchens* waiver does not preclude plain error review). We agree with the state that the defendant has failed to establish plain error.

The defendant argues that the court committed plain error because the "error here is certainly obvious as it goes against established precedent stating that if the jury can reconcile the facts proven with any reasonable theory consistent with innocence, then it cannot find the defendant guilty" and "the failure to grant relief from the court's error would result in manifest injustice."[13] The standards for plain error review are set forth in part I of this opinion.

The defendant cites our Supreme Court's decision in *State* v. *Griffin*, 253 Conn. 195, 209–10, 749 A.2d 1192 (2000), which involved a challenge to a jury instruction commonly known as a "two-inference" instruction. Specifically, the charge in *Griffin* provided: "If two conclusions reasonably can be drawn from the evidence, one of innocence and one of guilt, you must adopt the one of innocence." (Internal quotation marks omitted.) Id., 204 n.12. The court concluded that the trial court did not err in giving this instruction, stating: "[T]he two-inference charge, when viewed in the context of an otherwise proper instruction on reasonable doubt, does not impermissibly dilute the state's burden of proof. Consequently, the defendant cannot prevail on his . . . claim of constitutional impropriety." Id., 209. The court, however, invoked its "supervisory authority over the

administration of justice to direct that, in the future, our trial courts refrain from using the 'two-inference' language so as to avoid any such possible misunderstanding." (Footnotes omitted.) Id., 209–10. The court went on to provide the following as a permissible alternative to the two-inference charge: "If you can, in reason, reconcile all of the facts proved with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty." (Internal quotation marks omitted.) Id., 210 n.18.

The court in the present case did not give a two-inference instruction. Whereas the instruction in *Griffin* provided that if a jury could draw two inferences from the evidence, it must adopt the inference consistent with innocence, the charge in the present case did not instruct the jury to draw a conclusion of guilt or innocence. Indeed, the charge in the present case explicitly provided that the jury was *not* required to draw a conclusion of guilt or innocence and, instead, instructed the jury to draw the conclusion that "seems reasonable and logical." Furthermore, the charge did not relate to conclusions to be drawn from the evidence as a whole, which was the issue in *Griffin*. In this case, the charge related only to how the jury should evaluate individual pieces of evidence. It was, therefore, not a two-inference instruction.

Even if we were to assume that the specific charge in the present case was substantively similar to the charge in *Griffin*, that alone would be insufficient to establish plain or instructional error because the standard for instructional error requires the court to examine the entirety of the charge. "The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation . . . but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, [a reviewing court] must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, [a reviewing court] must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Newton*, 330 Conn. 344, 359–60, 194 A.3d 272 (2018).

In the present case, the court instructed the jury extensively on reasonable doubt and stated, at the end

of its reasonable doubt instruction and immediately before its inferences instruction, that "[t]he state has the burden, at all times, to establish each of the elements of the crime charged beyond a reasonable doubt . . . ." In addition to its charge on reasonable doubt, the court began its inferences instruction by reiterating that "you, the jury, must find every element proven beyond a reasonable doubt." Furthermore, the court emphasized that the inferences instruction related only to individual pieces of evidence by beginning the second part of the inferences instruction with the phrase "[w]ith respect to individual pieces of evidence." Taken as a whole, therefore, the instruction did not mislead the jury as to the state's obligation to prove every element of the charge beyond a reasonable doubt.

Thus, the defendant has not demonstrated that the court's instruction on inferences constituted an error that was so clear, obvious, and indisputable as to warrant the extraordinary remedy of reversal as required under our plain error analysis. See *State* v. *Jackson*, 178 Conn. App. 16, 24, 173 A.3d 974 (2017), cert. denied, 327 Conn. 998, 176 A.3d 557 (2018).

Moreover, even if we were to assume that such error exists, which we decline to do, the defendant has failed to demonstrate that the court's instruction constituted manifest injustice. To show manifest injustice, the defendant must demonstrate that the error "was of such monumental proportion that it threatened to erode our system of justice . . . or that it resulted in harm so grievous that fundamental fairness requires a new trial." (Citation omitted; internal quotation marks omitted.) Id., 29. Here, the defendant has failed to do so, and, accordingly, we conclude that his claim of plain error is without merit.

### III

Finally, the defendant claims that the trial court erred in denying his motion for a disclosure of the victim's school records. Specifically, the defendant claims that the court should have granted his motion to disclose the records because they might be germane to the victim's credibility and could contain exculpatory evidence. We have reviewed the records in camera and disagree with the defendant's claim.

The following additional facts and procedural history are relevant to the resolution of this claim. On December 28, 2016, prior to the start of trial, the defendant filed a motion for a disclosure of the victim's school records. On January 25, 2017, the court held a hearing on the motion, and defense counsel explained that he was seeking a disclosure of the records pursuant to *State* v. *Esposito*, 192 Conn. 166, 471 A.2d 949 (1984). Defense counsel argued that the records might bear on the victim's credibility because there was evidence that "the [victim] might have been having problems at . . .

school . . . ." The court stated that it would review the records in camera to determine whether they contained any exculpatory information.

On April 4, 2017, after reviewing the records in camera, the court held another hearing at which it denied the motion and the following exchange occurred:

"The Court:   . . .  [T]he court has reviewed th[e] records and there is . . . next to nothing that would be relevant to the presentation or defense of the case. I say next to nothing because there was one, I want to say it was March of 2014, what could be categorized as a one time disruptive behavior where the [victim] and her girlfriend were roughhousing in the hallway and they both fell on the floor. They were given an in-school suspension, both parents were called and they came to the school and were given a letter that suggested that they were roughhousing between periods and that was not going to be tolerated. They did some work in school and that was it. That was the only, the only piece of information that had any type of negative inference to it and that's not much of one.

"[The Prosecutor]: Um-huh.

"The Court: The [victim's] grades seemed to be very consistent throughout that period, as was her school attendance.

"[Defense Counsel]: The only question I would have for Your Honor, as Your Honor I believe was made aware [of] during the argument for the [*State* v.] *Esposito*, [supra, 192 Conn. 166] motion . . . the [victim] in this case initially reported . . . the allegations [of abuse] to one of her friends at school and . . . was overheard by . . . a staff member. I would just be interested in knowing if the person that she had this little incident with is one of the witnesses that she had revealed the allegations to.

"The Court:   . . .  [T]here's nothing in the school records that mentions any complaint, any criminal matter. [The defendant's name] never comes up. . . . [T]here was [also] an administrative checklist that had to be filled out by somebody and it simply mentioned that [the defendant] was not allowed to pick [the victim] up or on the grounds of the school. That was it. It's the only thing I saw."

The defendant asks this court to review the school records and determine whether the records are exculpatory to the extent that they impact the victim's credibility. The state agrees that this court should review the records.

"On review, we must determine whether the court's decision constituted an abuse of discretion. . . . This court has the responsibility to conduct its own in camera review of the sealed records to determine whether the trial court abused its discretion in refusing to release

those records to the defendant. . . . While we are mindful that the defendant's task to lay a foundation as to the likely relevance of records to which he is not privy is not an easy one, we are also mindful of the witness' legitimate interest in maintaining, to the extent possible, the privacy of her confidential records. . . . The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality . . . . Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." (Internal quotation marks omitted.) *State* v. *Tozier*, 136 Conn. App. 731, 753, 46 A.3d 960, cert. denied, 307 Conn. 925, 55 A.3d 567 (2012).

After an in camera review of the victim's school records, we conclude that the trial court did not abuse its discretion by denying the defendant's motion for a disclosure of those records. The records do not contain information that is probative of the victim's credibility or is otherwise exculpatory.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of (A) a class C felony . . . ."

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[3] In 2011, the defendant and E began having marital troubles. Between 2011 and late 2013, the defendant periodically would move out of the house that he shared with E and the victim. On December 29, 2013, the defendant travelled to the Dominican Republic where he remained until February 1, 2014. When the defendant returned, E refused to allow him to move back into the house. In the spring of 2014, the defendant and E divorced.

[4] The state has not argued that the defendant waived any claim of error or induced any error by expressly agreeing to the submission of the video recording to the jury and encouraging the jury to review it.

[5] The video recording of the victim's forensic interview was not part of her in-court testimony but was an out-of-court statement admitted for its truth and played during the victim's in-court testimony.

[6] There is no evidence in the record to establish whether the jurors ever watched the recording of the forensic interview in the jury room or, if they did so, whether they watched it more than once.

[7] The relevant Practice Book provisions were renumbered in 1998. Practice Book (1997) §§ 791 and 803 are identical to Practice Book §§ 40-44 and 40-56.

[8] In *Gould*, the court analyzed Practice Book (1997) § 863, which was renumbered as Practice Book § 42-26 in 1998. *State* v. *Gould*, supra, 241 Conn. 11–12. Sections 863 and 42-26, however, are substantively indistinguishable.

[9] The defendant also argues, on the basis of nonbinding authority from

other jurisdictions, that the court plainly erred in allowing the recording to be submitted to the jury for its deliberations in the jury room because it was "testimonial" in nature and "many courts in other jurisdictions hold it is erroneous for the trial court to allow the jury to have unsupervised access to either recorded testimony or recorded pretrial interviews in the jury room during deliberations even if they have been admitted as exhibits." The defendant, however, has not provided, and the court is not aware of, any cases that support a finding of plain error on the basis of nonbinding out-of-state cases. We cannot conclude that such cases "demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) *State* v. *Ruocco*, supra, 151 Conn. App. 740.

This is particularly true because the cases on which the defendant relies are distinguishable. See, e.g., *People* v. *Jefferson*, 411 P.3d 823, 827 (Colo. App. 2014) (allowing jury to view, unsupervised, recording of forensic interview with child who could not recall details of alleged abuse during trial was harmful error), aff'd, 393 P.3d 493 (Colo. 2017); *McAtee* v. *Commonwealth*, 413 S.W.3d 608, 622 (Ky. 2013) (improper to allow jury to view recording of witness' statements to law enforcement in jury room); *Reed* v. *State*, 373 P.3d 118, 122 (Okla. Crim. App. 2016) (improper to allow video-taped forensic interview of child, which included administration of oath wherein child affirmed she would be truthful, to be taken with jury into deliberations).

Unlike *People* v. *Jefferson*, supra, 411 P.3d 827, where the child victim's forensic interview became the main account of the alleged assault because, at trial, the victim was unable to recall the details of what had happened, in the present case, the victim provided a detailed description of the assaults when she testified at trial. *McAtee* v. *Commonwealth*, supra, 413 S.W.3d 622, also is distinguishable because it involved statements made to law enforcement, whereas the statements in the present case were made to a forensic psychiatrist. Finally, *Reed* v. *State*, supra, 373 P.3d 122, is distinguishable because, prior to being interviewed, the child victim in the case was required to swear an oath, whereas in the present case, the victim was not asked to give any such affirmation before her forensic interview.

To the extent that the defendant relies on *State* v. *Vines*, 268 Conn. 239, 244, 842 A.2d 1086 (2004), to support his claim that the forensic interview was testimonial, such reliance is misplaced. *Vines* involved the playback of several witnesses' in person trial testimony and not an out-of-court investigative forensic interview. Id., 241–42.

[10] The defendant argues that even if this unpreserved claim is not plain error, the court should reverse the judgment pursuant to its supervisory powers over the administration of justice. Specifically, the defendant urges this court to create a new rule that requires juries to review forensic interviews in child sex abuse cases in open court under the judge's supervision. "Supervisory authority is an extraordinary remedy that should be used sparingly . . . . Our supervisory powers are invoked only in the rare circumstance [in which] these traditional protections are inadequate to ensure the fair and just administration of the courts. . . . [W]e are more likely to invoke our supervisory powers when there is a pervasive and significant problem . . . or when the conduct or violation at issue is offensive to the sound administration of justice . . . ." (Internal quotation marks omitted.) *State* v. *Fuller*, 158 Conn. App. 378, 392, 119 A.3d 589 (2015); see also *State* v. *Simmons*, 188 Conn. App. 813, 846, 205 A.3d 569 (2019). Because we are unpersuaded that there is a pervasive and significant issue in allowing juries to replay forensic interviews outside of the presence of the court, or that this practice is offensive to the administration of justice, we decline to exercise our supervisory powers.

[11] "Under [the *Golding*] test, [a] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Dunbar*, 188 Conn. App. 635, 644, 205 A.3d 747, cert. denied, 331 Conn. 926, 207 A.3d 27 (2019).

[12] We note that the defendant did not file a reply brief. Had he done so, he could have argued, contrary to the state's assertion in its brief, that this claim was not waived under *Kitchens*.

[13] The defendant also argues that "[a]lternatively, the defendant's convictions should be reversed under this court's supervisory powers." Specifically, the defendant asks this court to invoke its supervisory authority because the instruction at issue "allowed the jurors to convict the defendant even though they may have concluded that the evidence led to an interpretation of innocence as well as guilt." "Supervisory authority is an extraordinary remedy that should be used sparingly . . . . Our supervisory powers are invoked only in the rare circumstance [in which] . . . traditional protections are inadequate to ensure the fair and just administration of the courts. . . . [W]e are more likely to invoke our supervisory powers when there is a pervasive and significant problem . . . or when the conduct or violation at issue is offensive to the sound administration of justice . . . ." (Internal quotation marks omitted.) *State* v. *Fuller*, 158 Conn. App. 378, 392, 119 A.3d 589 (2015). Because the instruction at issue was a correct statement of law, we conclude that this claim fails to meet the requirements of this extraordinary remedy.